compensation. I am of the opinion that he is entitled to his commission, when a bond under the act of 1847 is received, although service of the process by seizure of the vessel is stayed, and that this right is not affected by the circumstance that, in practice, the bond under the act of 1847 is ordinarily filed in the clerk's office by the claimant. Although filed in the clerk's office after approval, it is still a bond to the marshal, as obligee, and is deemed to be taken and returned by the marshal, who, upon his own responsibility, stays the execution of the process. The marshal is, therefore, in this case, entitled to his commission, provided the case is one where the debt or claim has been settled by the parties, within the meaning of the section. It has been heretofore held by Judge Blatchford, that, when the amount of a final decree is paid before execution, the debt or claim is settled, within the meaning of section 829. The Russia [Case No. 12,170]; and such is also my opinion.

For the reasons above given, I am, therefore, of the opinion that the marshal is entitled to his commission in this case, and the taxation is affirmed.

---

CITY SCHOOLS (BERTONNEAU v.). See Case No. 1,361.

---

## Case No. 2,773.

CIVIL RIGHTS ACT.

[21 Int. Rev. Rec. 173; 7 Leg. Gaz. 165.]

[See Append. Fed. Cas.]

---

## Case No. 2,774.

CIVIL RIGHTS BILL.

[1 Hughes, 541.]

[See Append. Fed. Cas.]

---

## Case No. 2,775.

The CIVILTA.

[6 Ben. 309.] [1]

District Court, S. D. New York. Jan., 1873. [2]

COLLISION IN THE SOUND—STEAMER AND SCHOONER—TOW-BOAT AND TOW.

1. A schooner was sunk, in Long Island Sound, by a collision with a ship which was at the time being towed at the end of a hawser, by a tug. The night was bright moonlight. The wind was light, from a little west of south, and the schooner was heading about northeast, and going at the rate of from two to three knots an hour. The ship and tug were heading about southwest. The schooner saw the ship and tug a little on her port bow at first, but the tug crossed to her starboard bow

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

[2] [Affirmed by circuit court (case not reported), and by supreme court in The Civilta v. Perry, 103 U. S. 699.]

when a short distance ahead, and the schooner, keeping on her course, came against the hawser by which the tug was towing the ship, and was then struck on her port side by the ship's stem. The tug was towing the ship at the rate of about seven miles an hour. The ship and tug claimed that the course of the schooner was parallel to theirs, and that, just as she passed the stern of the tug, she ported her helm and so came across the hawser and between the tug and ship, and thus caused the collision. The ship was under the charge of a pilot, who was on board of the ship, but he gave no order to the tug. The hawser by which the ship was towed was about two hundred and fifty feet long. Held, that the ship must be regarded as a ship under steam at the place of collision, because she was moving by steam alone, and her steam power, though two hundred and fifty feet away, was so by her option.

2. It was, therefore, the duty of the schooner to keep her course, and the duty of the ship to keep out of her way.

[Cited in The U. S. Grant, Case No. 16,803; The Jesse Williamson, Jr., Id. 7,296.]

3. On the evidence, the courses of the vessels were nearly end on, and yet drawing across each other, the tug and ship drawing across the course of the schooner from port to starboard.

4. The burden was on the ship to establish that the schooner changed her course. On the evidence, the schooner did not change her course.

5. In the absence of any special instructions from the pilot who was in charge of the ship, to the tug, as to what was to be done on the approach of the schooner, it was the duty of the master to navigate the tug and the ship as to avoid a collision between either and the schooner.

6. Both ship and tug were, therefore, liable.

[See note at end of case.]

[In admiralty. Libel by Augustus B. Perry and others, owners of the schooner Magellan, against the ship Civilta and the steamtug Restless, to recover damages for the sinking of the schooner by collision.]

R. B. Benedict, for libellants.
Beebe, Donohue & Cooke, for the tug and the ship.

BLATCHFORD, District Judge. This is a libel to recover for the damages caused by the sinking of the schooner Magellan, through a collision which took place between that vessel and the ship Civilta, off Hart's Island, at a little after half past two o'clock in the morning, on the 22d of December, 1872. The schooner was bound for Boston, from New York. The ship was in tow of the steamtug Restless, being towed behind her, by a hawser, and was bound to New York, from New Haven. The night was pleasant and lit by the moon. The wind was light, and a little to the west of south. The schooner was sailing free, with her booms off to port, and was making from two to three knots an hour. The ship and tug were making over seven knots an hour. The schooner went safely by the tug, and came in contact with the hawser, and broke it, and then the ship struck the port side of the schooner at about the port fore rigging of the schooner, the schoon-